## THE FRANKLIN BANK *versus* BENJAMIN FREEMAN.

Where a loan was made by the cashier of a bank and *memorandum* checks received as security, it was *held*, that the cashier was a competent witness for the bank in an action by it against the drawer of such checks, although the transaction was alleged to have been not conformable to banking principles, and the cashier had given bond for the faithful performance of his duties.

It is not necessary, that a memorandum check should be presented for payment to the bank upon which it is drawn, nor that a demand of payment should be made of the drawer before commencing an action against him.

Where a printed blank check upon the North Bank was altered by the substitution of the word "Market" for "North," and the insertion of the word "Memo." and was then filled up in the usual form, it was *held*, that it was a memorandum check; and that there was no necessity for presenting it to the Market Bank for payment, although it appeared that the drawer did business there, and that a common check drawn by him for the same amount, would have been paid if presented. A promise by the drawer of a check to pay it, is not binding, if made after it became due, and under an ignorance of the fact, that it had not been duly presented to the bank for payment.

THIS was assumpsit, brought to recover the amount of two checks, one for the sum of $1000, and the other, for the sum of $2000. The declaration contained two special counts, in which the checks were described, and the common money counts.

The trial was before *Wilde* J.

The following is a copy of the first check, the word "North" being cancelled by two lines drawn across it.

Market *North* Bank.    Memo.
1000 dolls.    cts.    Boston, August 27, 1833.
Pay to Payable Friday 30th inst. or bearer, one thousand dollars $\frac{1}{100}$.    Benjamin Freeman.

To the Cashier.

The second check was similar in form, bore the same date, and was payable on the 31st of the same month. The plaintiffs introduced Jeremy Drake as a witness, who testified, that he was cashier of the Franklin Bank on the day of the date of these checks, and continued to be such cashier; that he also performed the duty of a teller of that bank; that he had given a bond in the usual form, for the faithful performance of his duties as an officer of the bank, and was accountable for the money of the bank, it being all under his control; that he received these checks of Charles Brown on the day of their

date, and let him have bills of the bank to the amount of $3000 ; that Brown paid him two dollars, and agreed that the bills should not be returned to the bank till the checks had become due ; that they were not in fact returned till after the 7th day of October then next ensuing, when it was generally known that Brown had absconded ; that, in accounting for the money in his custody with the directors of the bank, these checks were treated either as so much money, or as checks on hand ; that he considered them as memorandum checks ; that there had been no vote of the directors authorizing a loan of money upon such paper, or approving of this transaction, but that it had been made known to the president of the bank and to the other directors, and no objection had to his knowledge been made thereto ; that he considered it within his authority as cashier ; and that he had always lent money on memorandum checks, with the knowledge of the directors, and they had never objected to it.

The counsel for the defendant objected, that inasmuch as the transaction was not in conformity to banking principles, and therefore not in pursuance of the authority granted by the charter of the bank, the witness would be liable to the directors or stockholders, if the plaintiffs did not recover, and was consequently incompetent on the ground of interest. This objection was overruled.

The witness further testified, that after these checks had become due, he told the defendant that they ought to be paid ; that the defendant said, that they should be paid ; that on the morning after Brown absconded, the defendant requested the witness to keep it a secret, and said that he would see them paid soon ; but that afterwards he told the witness, that as the bank had sued him, he should keep them out of their money as long as he could ; that there was no entry of the checks on the books of the bank ; and that no interest was paid after the exchange of the bills for the checks. The plaintiffs then pro· posed to prove, that it was not usual for such checks to be presented to the bank on which they were drawn, for payment, or to notify the non-payment thereof to the drawer. The defendant objected to the admission of such evidence ; but the objection was overruled.

Charles Sprague, the cashier of the Globe Bank in Boston, Eliphalet Williams, cashier of the City Bank, and Drake, testified that the checks were not in the usual form of " memorandum " checks ; that they should have felt authorized to pay such checks ; but that memorandum checks are never presented to the bank on which they may be drawn, for payment

Gurdon Steele, cashier of the North Bank in Boston, tes tified that he should not have paid such checks as those in question, if they had been presented.

Henry A. Brewer testified, that the words in writing in the checks were all in the handwriting of the defendant ; that the defendant transacted business at the Market Bank, and had regular checks of that bank at the time.

The plaintiffs introduced Samuel O. Mead, the cashier o the Market Bank, as a witness, who testified that on Augus 30, 1833, there was a balance in the bank in favor of the defendant, amounting to the sum of $1079·32 ; that on the 31st of the same month, the balance in his favor was $289·72, and continued so on the 1st and 2d of the ensuing September ; and that the bank would have paid his checks for the amounts for which these checks were drawn, if they had been presented on 'ne days when these checks became payable.

It was admitted by the plaintiffs, that the checks had never been presented to the Market Bank for payment ; and that no demand for payment had been made of the defendant, and no notice of non-payment given to him, other than is before stated.

B. *Sumner* and *Willis*, for the plaintiffs, to the point, that Drake was a competent witness for the plaintiffs, cited 1 Stark on Evid. 191 ; 2 Stark. on Evid. 746, 747 ; *Bent* v. *Baker*, 3 T. R. 27 ; *Smith* v. *Prager*, 7 T. R. 60 ; *Leavenworth* v. *Pope*, 6 T. R. 419 ; to the point, that these were memorandum checks, and so not intended to be presented to the bank for payment, and that having come into the possession of the plaintiffs for a valuable consideration, they were good evidence to support the money counts, *Brown* v. *Gilman*, 13 Mass. R. 158 ; *Cushing* v. *Gore*, 15 Mass. R. 69 ; *Ball* v. *Allen*, 15 Mass. R. 433 ; *Pierce* v. *Crafts*, 12 Johns. R. 90 ; *Tatlock* v. *Harris*, 3 T R. 174 ; *Grant* v. *Vaughan*, 3 Burr. 1516 ;.

Franklin Bank. *v.* Freeman.

*April 3d.*

Franklin
Bank
*v.*
Freeman.

*Bullard* v. *Bell,* 1 Mason, 243 ; *Ellis* v. *Wheeler,* 3 Pick. 18 ; and to the point that the evidence of usage as to such checks was admissible, *Homer* v. *Dorr,* 10 Mass. R. 26 ; *Murray* v. *Hatch,* 6 Mass. R. 477 ; *City Bank* v. *Cutler,* 3 Pick. 414.

*Washburn,* for the defendant, cited to the point, that Drake was an incompetent witness on the ground of interest, this being a transaction which would make him liable for loss under his bond, *American Bank* v. *Adams,* 12 Pick. 303 ; that the word "Memo." did not constitute a part of the contract, *Peirce* v. *Butler,* 14 Mass. R. 303 ; *Williams* v. *Waring,* 10 Barn. & Cressw. 2 ; that the Court must determine the nature of this contract from the check itself, and that the evidence . of usage was inadmissible to explain or control it, *Free* v. *Hawkins,* 8 Taunt. 92 ; *Mosely* v. *Hanford,* .10 Barn. & Cressw. 729 ; *Stackpole* v. *Arnold,* 11 Mass. R. 27 ; *Hunt* v. *Adams,* 7 Mass. R. 518 ; *Trustees &c. in Hanson* v. *Stetson,* 5 Pick. 506 ; *Spring* v. *Lovett,* 11 Pick. 417 ; that presentment and notice were necessary, *Cruger* v. *Armstrong,* 3 Johns. Cas. 5 ; 3 Kent's Comm. 76 ; 2 Stark. on Evid. 262, 263 ; *Bickerdike* v. *Bollman,* 1 T. R. 405 ; *Claridge* v. *Dalton,* 4 Maule & Selw. 229 ; *Robinson* v. *Ames,* 20 Johns. R. 146 ; that the promises of the defendant made after the checks became due, were not binding upon him, they being made under an ignorance of the facts, *Garland* v. *Salem Bank,* 9 Mass. R. 408 ; and that, as these promises were conditional on the part of the defendant, and the condition was not complied with by the plaintiffs, the defendant was discharged from his liability, *Agan* v. *M'Manus,* 11 Johns. R. 160.

June 22d.

PUTNAM J. delivered the opinion of the Court. Was Drake a competent witness? It seems to us, that he was not interested in the event of this suit. If the plaintiffs sl ould recover, it will be for their own use. If the plaintiffs should fail, and if they should sue the witness upon his bond for misconduct in his office of cashier, this verdict could not be given in evidence for or against him. The plaintiffs would be required to support their action, and the defence would be sustained, by other evidence. The witness, from his

connexion with the plaintiffs, may have strong wishes that they should recover, which might be a proper subject of remark to the jury, in regard to the credit which they should give to his testimony ; but we are satisfied, that his competency is not affected by any supposed liability upon his bond to the plaintiffs in another action. 1 Phil. Evid. (Dunlap's ed. 1829,) 36, and notes, where this subject is examined, and many cases collected.

Then the question is, whether the defendant is liable upon the checks produced by the plaintiffs. If they are what are called memorandum checks, the defendant is liable, notwithstanding they were never presented to the bank upon which they were drawn, for payment, and notwithstanding the plaintiffs have not made a demand of payment before the action was commenced. That this is the meaning of *memorandum checks* is proved by all the evidence in the case. It is a rule of business perfectly understood in this commercial community ; too well established to be questioned. A memorandum check is a contract by which the maker engages to pay the *bonâ fide* holder absolutely, and not upon a condition to pay if the bank upon which it be drawn should not pay upon presentation at maturity, and if due notice of the presentation and non-payment should be given. The word " memorandum " written or printed upon the check describes the nature of the contract with precision. It is an express waiver, on the part of the maker of the check, of any objection against the claim of a *bonâ fide* holder, that it had not been presented for payment, or if it were presented and not paid, that he had had no notice of the nonpayment by the bank therein named.

Then it is to be considered whether these are memorandum checks. It is proved, that they are now in the same form and condition as they were in when they were signed by the defendant. Whatever may be the legal effect of the paper, it was written and prepared by the defendant himself. The erasure of the word " North," and the insertion of the word " Market," before the word " Bank," were made by the defendant before he signed the papers. And it is of no consequence, that there was an erasure in the paper, if it

were made without fraud, and before signing. It is argued for the defendant, that the erasure of the word "North," and the insertion of the word "Market," indicates clearly the intent of the maker, that the checks were to be presented to the Market Bank for payment, and therefore that the defendant may legally and rightfully avail himself of the neglect of the plaintiffs (who were holders) in not presenting the same accordingly ; especially as it is proved in the case, that Freeman's checks, for the amounts for which these are drawn, would have been paid by the Market Bank, if they had been presented when they became due. Why (it is asked by the defendant's counsel) did the defendant strike out " North " and insert " Market " before the word " Bank " ? We think this question may be answered by another, viz. why did the defendant write the word " memorandum," or " Memo." upon the face of the check, unless he intended to characterize the check accordingly ? The construction of the paper, as it was signed, is for the Court. We are to give a meaning and effect to all the words employed ; and we cannot think that any other meaning can be ascribed to that word, than that which we have suggested. We are not at liberty to suppose, that it was written there without meaning. On the contrary, we are satisfied, that it was placed there as an admission or declaration on the part of the maker, that he would pay the checks absolutely and unconditionally, distinguishing them, as memorandum checks, from other checks which were to be presented for payment.

Under this view of the subject, we place no reliance upon the promises which the defendant made after the checks became due. If the undertaking of the defendant had been conditional, and not absolute, his promises under an ignorance of the facts (if such were the truth of the case,) would fall within the case of *Garland* v. *Salem Bank*, 9 Mass. R. 408. If the case were put upon that ground, the cause should be submitted to the jury, to find whether or no the defendant made those promises under an ignorance of the fact, that the checks had not been presented, &c. His conduct and promises after the checks became due, would be perfectly consistent with his liability, if the under-

taking were absolute and not conditional. We think, for the reasons before suggested, that taking the papers as they were written and prepared, they are to be construed as memorandum checks, and subject the defendant to all the liabilities created by such paper.

It is not suggested, that the plaintiffs are not *bond fide* holders of the checks.

It is therefore the clear opinion of the whole Court, that the defendant is liable to this action, notwithstanding the checks were not presented to the Market Bank, and notwithstanding no demand was made upon the defendant before the action was brought; and that judgment shall be entered accordingly for the plaintiffs.